IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Neil Corneilous S. Cumbee, #247876, )<br>Petitioner, )<br>)<br>vs. )<br>)<br>Willie Eagleton, Warden of Evans<br>Correctional Institution, )<br>)<br>Respondents. ) | Civil Action No. 6:06-1566-MBS-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**BACKGROUND OF THE CASE**

The record reveals that the petitioner is currently confined in the Evans Correctional Institution of the South Carolina Department of Corrections (SCDC), pursuant to commitment orders from the Horry County Clerk of Court. The Horry County Grand Jury indicted the petitioner at the December 1997 term of court for trafficking in crack cocaine and unlawfully carrying a pistol (97-GS-26-2508). Attorney Candice Adams represented him on these charges. On February 10-11, 1998, the petitioner received a jury trial before the Honorable James Lockemy. The jury could not reach a verdict and a mistrial was declared.

On March 3-5, 1998, the petitioner received another jury trial, again before Judge Lockemy. This time, the jury found him guilty as charged. Judge Lockemy sentenced the petitioner to 20 years imprisonment and a $50, 000.00 fine for trafficking, and imposed a concurrent one year sentence for unlawful carrying of a pistol.

The petitioner timely served and filed a notice of appeal. Assistant Appellate Defender Aileen P. Clare represented him on appeal. On July 7, 1999, appellate counsel filed the final *Anders*[1] brief of appellant and moved to be relieved as counsel. The only issue presented in the *Anders* brief was stated as follows:

> Did the Court err by refusing to grant a directed verdict of not guilty?

Assistant Attorney General Salley W. Elliott represented the State on appeal. On March 2, 2000, the South Carolina Court of Appeals filed a *per curiam* unpublished opinion, in which it dismissed the petitioner's appeal and granted counsel's motion to be relieved. *State v. Neil Cornelius S. Cumbee,* 2000-UP-150 (S.C. Ct. App., filed March 2, 2000).[2] The South Carolina Court of Appeals sent the remittitur to the Horry County Clerk of Court on March 20, 2000.

The petitioner filed a *pro se* post-conviction relief (PCR) application (01-CP-26-925) on February 23, 2001, in which he alleged the following grounds for relief:

> (1)    Counsel was ineffective during trial for failing to move the court to quash the indictment for trafficking in crack cocaine because the indictment fails to contain the necessary elements of the offense.

> (2)    Counsel was ineffective during trial for failing to object to the assistant solicitor's improper comments during closing arguments, also, counsel was ineffective for failure to request curative instructions or move for a mistrial because of the assistant solicitor's improper comments.

---

[1]*Anders v. California*, 386 U.S. 738 (1967).

[2]There was apparently no *pro se* response filed by the petitioner to the *Anders* brief.

2

The State filed its return on June 27, 2002. The Honorable Steven H. John held an evidentiary hearing into the matter on February 26, 2004, at the Horry County Courthouse. The petitioner was present at the hearing and represented by attorney R. Scott Joye. Assistant Attorney General William F. Partridge, III, represented the State. The petitioner testified on his own behalf, while the State presented the testimony of trial counsel, Candice Adams Lively.

On April 13, 2004, Judge John filed an order of dismissal, in which he denied relief and dismissed the application with prejudice. The order addresses only the allegation of ineffective assistance of counsel based on trial counsel's failure to object during the State's closing argument. A timely notice of appeal was served and filed.

Assistant Appellate Defender Aileen P. Clare represented the petitioner in collateral appellate proceedings. On December 29, 2004, the petitioner filed a petition for writ of certiorari. The petition for writ of certiorari listed the following "Questions Presented":

> Was trial counsel ineffective for not objecting to the solicitor's closing argument, in which she vouched for the credibility of state witnesses and commented on petitioner's right to remain silent?
>
> (a)    Was counsel ineffective for not objecting when the solicitor improperly vouched for the credibility of state witnesses?
>
> (b)    Was counsel ineffective for not objecting when the solicitor referred to petitioner's failure to present evidence?

The State filed a return to petition for writ of certiorari on March 10, 2005. The South Carolina Supreme Court filed an order on April 10, 2006, in which it denied certiorari, and it sent the remittitur to the Horry County Clerk of Court on May 1, 2006.

In his *pro se* petition now before this court, the petitioner raises the following allegations (verbatim):

3

**GROUND ONE:**  Did the court err by refusing grant a directed verdict of not guilty?
**SUPPORTING FACTS:** ... The state failed to prove its case of the gun being that of the defendant, as they could only prove that the gun was found under the passenger seat of the car. ...

**GROUND TWO**:  Counsel was ineffective during trial for failing to move the court to quash the indictment for trafficking in crack cocaine because the indictment fails to contain the necessary elements of the offense.
**SUPPORTING FACTS**:  ... The indictment in this case is insufficient to charge the offense of "trafficking in Crack Cocaine" because they failed to set forth the elements of the offense purported to be charged. ...

**GROUND THREE**:  Counsel was ineffective during trial for failing to object to the assistant Solicitor's improper comments durig closing arguments, also, counsel was ineffective for failure to represent curative instruction or move for a mistrial because of the assistant Solicitor's improper comments.
**SUPPORTING FACTS**:  ... Assistant Solicitor Bacot's conduct during trial ... misled the jury and prejudiced the Petitioner's case at trial. ...

On August 21, 2006, the petitioner filed a motion for summary judgment. By order filed August 24, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The petitioner filed his response to the motion on October 16, 2006.

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e), provides in pertinent part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Title 28, U.S.C., Section 2244(d) provides:

(1)    A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

5

## ANALYSIS

The respondents first argue that the petition is untimely under the one-year statutory deadline set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The one-year time period runs from the latest of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §2244(d)(1)(A). The respondents argue that the federal petition was filed 382 days after the petitioner's conviction became final – or 17 days too late. However, the date used by the respondent (June 26, 2006) is the date the petitioner signed his *amended* federal petition. The *Houston v. Lack*, 487 U.S. 266 (1987), delivery date of the original petition in this action is May 18, 2006. The original petition was filed with this court on May 22, 2006. Accordingly, the petition is timely.

### Ground One

The petitioner first alleges that the trial judge erred by refusing to grant a directed verdict on the charges of trafficking in crack cocaine and unlawful carrying of a pistol. The respondents argue that the petitioner has defaulted on any alleged violation of due process because he relied solely upon state law and did not raise any due process of law claim in support of his argument at trial and on direct appeal. However, assuming for purposes of this motion that the claim is not procedurally defaulted, the claim fails on the merits. "Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 296 (1992)). Federal review of the sufficiency of the evidence to support a petitioner's state court conviction is not meant "to consider anew the jury's determination of guilt or to replace the State's system of direct appellate review." *Id.* at 405-06 (citing *Wright*, 505 U.S. at 292). An "applicant is entitled

to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324, n. 16. Also, a federal reviewing court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Further, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). *See also Jackson*, 443 U.S. at 318-319 ("[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt'"). Finally, when faced with evidence that allows conflicting inferences, this court must presume that the jury resolved such conflicts in the State's favor. *Jackson*, 443 U.S. at 326.

The direct and circumstantial evidence presented at trial, viewed in the light most favorable to the State, tended to prove the following: Sgt. James Workman was the patrol shift supervisor for the City of Myrtle Beach Police Department in August 1997. Around 9:00 a.m. on August 4, 1997, he was patrolling on Chester Street. As he approached Ninth Avenue North, he saw a black two-door Nissan vehicle turn off of Ninth Avenue North and onto Chester. When he looked at the car, the occupants all "kind of stiffened up and they looked like they were scared to death." While the driver was attempting to watch Sgt. Workman without Sgt. Workman noticing, the person in the front passenger's seat (whom he later learned was the petitioner) was "slumped over looking and ... moving in the seat" (supp. app. pp. 155-57; 177). Because the vehicle was going only about 15 m.p.h., Sgt. Workman passed it. However, he continued to observe the people in it. Both the front seat passenger (the petitioner) and the passenger in the rear seat were

7

watching Sgt. Workman to see whether he would turn around.  The petitioner was also still moving around in the seat.  Sgt. Workman turned onto Ninth Avenue North and drove up to King's Highway (Hwy. 17), which runs parallel to Chester, and continued to observe this car.  When the Nissan reached the intersection with Eleventh Avenue North, it turned onto Eleventh Avenue North.  Sgt. Workman saw the car as it crossed King's Highway (supp. app. pp. 157-59; 177).

In light of the unusual behavior of the occupants, Sgt. Workman turned onto Eleventh Avenue North and followed the car to see whether they were still nervous.  The occupants again saw him and still appeared nervous.  Also, the person in the rear seat turned around to watch him as the car crossed the intersection with Broadway Street.  By then, Sgt. Workman had noticed that the car had paper tags, and he was unsure as to whether it was properly registered.  Therefore, he continued following the car when it turned onto Tenth Avenue.  However, the driver abruptly turned left without using a turn signal as he started to catch up with the car (supp. app. pp. 159-62; 177-78).  The car had turned onto a side street that leads to the City Hall parking lot; and Sgt. Workman activated his blue lights.  He pulled in behind the car and made a stop for the traffic violation.  Sgt. Workman immediately radioed his position to dispatch and learned that two officers would soon arrive to act as backup, which was Department procedure.  He and the driver of the vehicle, Akim Young, both got out of their vehicles and met at the rear of the Nissan.  Young was unable to produce a vehicle registration when asked for one, so Sgt. Workman and Young walked back to the driver's side of the car.  Young got into the car and unsuccessfully looked for a registration.  As he was doing so, Sgt. Workman noticed that the rear passenger was "sitting pretty much stiff."  However, the petitioner was moving around in his seat, appeared nervous and avoided eye contact (supp. app. pp. 161-64; 18).

Because the petitioner "appeared to be covering up his right side, his right pocket," Sgt. Workman asked him whether something was wrong.  He did not recall the

8

petitioner's response but indicated that "it wasn't a normal response". Eventually, Young got out of the car and handed his license to Sgt. Workman but said that he could not find the registration. At Sgt. Workman's request, Young went to the rear of the vehicle, where he allowed Sgt. Workman to pat him down for weapons. Sgt. Workman did not find any weapons and did not consider Young to be a threat. At that point, however, the petitioner got out of the passenger side door and started walking toward Sgt. Workman and Young (supp. app. pp.164-68; 179). When the petitioner refused Sgt. Workman's initial directive to return to the vehicle, Sgt. Workman stepped back a short distance from Young. The petitioner, who was holding his right hand over his pocket the entire time, "looked scared and confused." Sgt. Workman became "a little scared" when he noticed that there was "a large bulge" in the petitioner's pocket because he did not know what the "bulge" was and the petitioner kept advancing toward him. Finally, the petitioner obeyed the repeated commands to get back into the car and returned to the front passenger seat.

Officer Brian Pina arrived as backup shortly after the petitioner got back into the car. Sgt. Workman told him why the car had been stopped and explained the nervous behavior of the other occupants, particularly the petitioner. At Sgt. Workman's direction, Officer Pina stood behind the passenger side of the vehicle and watched the occupants (supp. app. pp. 168-70; 221-25). Officer Atwood arrived minutes later. Sgt. Workman informed him about seeing a bulge in the petitioner's pocket, which he feared was a weapon; and Officer Atwood attempted to conduct a pat-down of the petitioner at Workman's direction. As the petitioner was seated in the front passenger seat, Officer Atwood walked up to the vehicle, introduced himself and explained that he wanted to pat down the petitioner. Following Officer Atwood's directions, the petitioner stepped out of the car, turned and faced the vehicle and placed his hands on top of it. The petitioner, however, would not allow a complete pat-down. As soon as Officer Atwood reached the petitioner's shoulder area, the petitioner removed his right hand from the roof of the car and

started to place it down by his side. Officer Atwood "immediately stopped" and "told him to place his hand back up on top or the car" (supp. app. pp. 170-74; 183-84; 194-99; 225-26).

During the second attempted pat-down, the petitioner again removed his right hand from the car's roof and "started placing it down by his right side." In a sterner tone of voice, Officer Atwood again told him to place his hand on the roof of the car and "to leave it there." As soon as Officer Atwood resumed his efforts to pat down the petitioner, however, the petitioner quickly removed his right hand from the roof of the car. His hand struck Officer Atwood's right hand and a struggle ensued as the petitioner attempted to flee the scene. Eventually, Officer Atwood and Officer Pina wrested the petitioner to the ground, subdued him, and handcuffed him.

In the course of his struggle with the officers, the petitioner took a large "clear plastic bag," which also had several smaller bags in it, from his pocket and he attempted to bury this bag in the dirt and mulch in nearby shrubbery. Each bag contained "an off-white in color substance." Once he was handcuffed, Officer Atwood retrieved the large plastic bag (State's ex. 6), which had the suspected drugs (State's ex. 3, 4, 8). When he searched the petitioner, he found "an extra little small zip lock bag," "which had one individual rock of what I believed to be crack cocaine" inside of it (supp. app. pp. 174-75; 199-204; 226-28; 233-37).

In the course of the struggle with the petitioner, Young fled the scene. However, he left his driver's license behind, and he was arrested when the officers located him roughly a month later. Also, Officer Atwood searched the car before it was towed from the scene. On the front passenger's side floorboard, he found a set of electronic scales (State's ex. 2). Underneath the seat, he found a loaded pistol (State's ex. 1). The petitioner was the only one of the vehicle's occupants who had immediate access and control of these items (supp. app. pp. 205-07).

SLED Agent Hue Tang is a chemical analyst.  At the request of the City of Myrtle Beach Police Department, he examined the large clear plastic bag (State's ex. 6) and State's Exhibits 3-4 and 8-12.  To determine what the substances were in the items examined, he took a representative sample of " a few milligram[s]" from each exhibit.  His analysis showed that the substance in State's Exhibit 6 was 0.35 grams of crack cocaine. State's Exhibits 3, 4 and 8, which had been in the smaller plastic bags in State's Exhibit 6, were also crack cocaine.  The total weight of all four exhibits was 77.69 grams (supp. app. pp. 273-91).

The petitioner's trial counsel moved for a directed verdict after the State had rested its case.  On the charge of trafficking in crack cocaine under S.C. Code Ann. §44-53-375 (b)(C)(2) (Supp. 1998), counsel argued that the petitioner was entitled to a directed verdict because State's Exhibits 3, 4 and 8 each contained "several substances" and that "[e]ach rock in and of itself is a mixture," unlike powder cocaine.  Therefore, counsel argued, the State had not met its burden of proof.  The trial judge, however, denied the petitioner's motion because Agent Tang testified as an expert, without objection, that there were 77 grams of crack cocaine (supp. app. p. 295).  The trial judge also denied the renewed motion, which was made after the petitioner had decided that he would not testify (supp. app. pp. 307-08).

The respondents argue that based upon the evidence set forth above, the trial court properly denied the petitioner's directed verdict motion on both charges.  They contend that he clearly was not entitled to a directed verdict on the offense of trafficking in crack cocaine under Section 44-53-375(C)(2)(b), relying on the explanation provided by the state court of appeals in *State v. Stanley*, 615 S.E.2d 455 (S.C. Ct. App. 2005):

> A person who knowingly sells, manufactures, delivers, purchases, or brings into this State, or who provides financial assistance or otherwise aids, abets, attempts, or conspires to sell, manufacture, deliver, purchase, or bring into this State, or who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive

11

> possession of ten grams or more of ice, crank, or crack cocaine ... is guilty of ... "trafficking in ... crack cocaine." S.C. Code Ann. § 44-53-375(C) (2002) (emphasis added). Actual possession occurs when the drugs are found to be in the actual physical custody of the person charged with possession. *State v. Ballenger*, 322 S.C. 196, 470 S.E.2d 851 (1996); *State v. Hudson*, 277 S.C. 200, 284 S.E.2d 773 (1981). In order to prove constructive possession, the State must show the defendant had dominion and control, or the right to exercise dominion and control, over either the drugs or the premises upon which the drugs are found. *Ballenge*r, 322 S.C. at 199, 470 S.E.2d at 854. Such possession can be established by circumstantial or direct evidence or a combination of the two. *State v. Brown*, 267 S.C. 311, 227 S.E.2d 674 (1976). Possession requires more than mere presence. *State v. Muhammed,* 338 S.C. 22, 524 S.E.2d 637 (Ct.App.1999). The State must show the defendant had dominion or control over the thing allegedly possessed or had the right to exercise dominion or control over it. *Id.*

*Id.* at 464-65.

The State's evidence proved that the petitioner knowingly had actual possession of 77.69 grams of crack. It was in his pocket at the time Sgt. Workman stopped Young's Nissan for failing to use a turn signal and, inferentially, was the reason he, Young, and the third passenger were extremely nervous or "scared" when they first saw Sgt. Workman. The petitioner also exercised exclusive dominion and control over it as shown by evidence that he attempted to conceal that he had the crack on him; he attempted to flee when Officer Atwood attempted to pat him down, *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[h]eadlong flight ... is not necessarily indicative of wrongdoing, but it certainly is suggestive of such"); *State v. Beckham*, 513 S.E.2d 606, 612 (S.C. 1999) (evidence of flight is evidence of defendant's guilty knowledge and intent), and he tried to bury it in the mulch as he was being subdued by the officers. Under these circumstances, the directed verdict motion was properly denied.

Further, as argued by the respondents, this evidence makes the petitioner's case factually distinguishable from *State v. Heath*, 635 S.E.2d 18 (S.C. 2006). In *Heath*,

police discovered 43.48 grams of crack in a car-washing mitt in a recycling bin outside near the back door of a house. However, the prosecution did not present any direct or circumstantial evidence linking the appellant to the crack. The State proved that the appellant lived in the home where the crack was found, but the home was owned by his mother. "As a result, it is arguable that [a]ppellant merely had a right to access the area where the crack was found, not actual dominion and control of the property." *Heath*, 635 S.E.2d at 19. However, in the instant case, the prosecution directly linked the petitioner to the crack.

Further, the petitioner's argument that the State had not proven the amount of crack also fails. The representative sample taken by Agent Tang properly reflected that State's Exhibits 3, 4 and 8 were all crack cocaine. *See* S.C. Code Ann. § 44-53-392 (Supp. 2006) ("Notwithstanding any other provision of this article, the weight of any controlled substance referenced in this article is the weight of that substance in pure form or any compound or mixture thereof."); *State v. Raffaldt*, 456 S.E.2d 390, 394 (S.C. 1995) ("[i]t is the amount of cocaine, rather than the criminal act, which triggers the trafficking statute, and distinguishes trafficking from distribution and simple possession. If the amount of cocaine, or any mixture containing cocaine, is ten grams or more the trafficking statute is applied."). *See also State v. Grandy*, 411 S.E.2d 207, 208 (S.C. 1991) ("where the undisputed evidence is that the amount involved exceeds the minimum trafficking amount, then only the trafficking charge should be submitted to the jury").

Likewise, the petitioner was not entitled to a directed verdict on the charge that he illegally possessed a weapon. At the time of the petitioner's arrest and trial, S.C. Code Ann. § 16-23-20 (Supp. 1997), provided that, unless the individual fell within one of twelve exceptions, "[i]t is unlawful for anyone to carry about the person any pistol, whether concealed or not . . . ." As the petitioner was not in actual possession of the pistol, the State had to prove that he was knowingly in constructive possession of it. To prove

13

constructive possession, the State must prove that the defendant had actual dominion and control, or the right to exercise dominion and control, over the item possessed. *See State v. Brown*, 227 S.E.2d 674 (S.C. 1976). Possession can be established by circumstantial or direct evidence or a combination of both. *Id*. at 676. "Where contraband materials are found on premises under the control of the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury." *State v. Hudson*, 284 S.E.2d 773, 775 (1981). Here, the prosecution's evidence established that the weapon was found under the seat in which the petitioner was riding. A set of electronic scales was found on the floorboard of the front passenger's side, and the petitioner, who had over 77 grams of crack in his pocket, was the only person who had immediate access to and control over these items (supp. app. pp. 205-07). Based upon the foregoing, the court did not violate *Jackson* in denying a directed verdict on this charge because it cannot be said that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324 (footnote omitted).

### *Ground Two*

The petitioner alleges that his counsel was ineffective for failing to move to quash the indictment for trafficking in crack cocaine because the indictment failed to set forth the necessary elements of the offense. This allegation was raised in the petitioner's PCR; however, it was not preserved for collateral appellate review since it was not ruled upon by the PCR judge. *See Pruitt v. State*, 423 S.E.2d 127, 128 n.2 (S.C. 1992) (issue must be raised to and ruled on by the PCR judge in order to be preserved for review). Further, the allegation was not raised in the state court of appeals on direct appeal or in the state supreme court in PCR. If a petitioner before a federal district court fails to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts. In such a

14

case, a federal district court is barred from considering the habeas claim absent a showing of cause and actual prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice, as the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907, 916 (4th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). The petitioner has failed to make such a showing with regard to this claim. Moreover, a state court's determination that one of its courts had jurisdiction over a purely state law criminal charge is not a matter which is cognizable in federal habeas corpus. *Wright v. Angelone*, 151 F.3d 151 (4th Cir. 1998); *Wells v. Egeler*, 532 F.2d 1058, 1059 (6th Cir.1976) ("[d]etermination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary"). Based upon the foregoing, this claim fails.

### Ground Three

Lastly, the petitioner alleges that trial counsel was ineffective for failing to object to the assistant solicitor's allegedly improper comments during closing argument. He further alleges that counsel was ineffective for failing to present a curative instruction or move for a mistrial because of these comments. The state PCR judge found trial counsel's testimony regarding her "trial strategies with regard to failing to object during the closing argument was credible and this Court affords it great weight. The mere fact that the trial counsel did not object resulted in no harm or prejudice to the defendant/applicant." Based on these findings, the PCR judge found that the petitioner had not proved either deficient performance or resulting prejudice (app. pp. 350-52). The state supreme court denied certiorari on this issue, without comment. This court agrees with the respondents that the relevant decision for this court's review is then the order of the PCR judge. *See Felton v. Barnett*, 912 F.2d 92, 94 (4th Cir.1990) ("[t]he denial of the petition for certiorari was not ...

the last state court judgment" for purposes of applying *Harris*, because "the denial of such a writ is not a judgment but is simply a refusal to hear the appeal").

In support of this allegation, the petitioner quotes several statements made by the assistant solicitor. First, the petitioner maintains that the assistant solicitor's closing argument vouched for the credibility of the prosecution witnesses in two instances. The assistant solicitor emphasized that the jurors, as the finders of fact, should find that the State's witnesses had testified truthfully and accurately as follows:

> [T]he trial judge will] probably tell you that you don't have to believe a hundred percent of a witness or any of the witnesses. You can believe part of it or all of it or none of it. In this case, I submit you have no reason to doubt anything that any of the witnesses said. You saw their demeanor. You saw the way - - you heard the way they presented the facts, and I don't believe there can be any doubt that they were telling you the truth and telling you what happened back on August 4th, 1997. . . .

(Supp. app. p. 327). She later stated that the jurors should "[t]ake the chemist's word. Understand the law. Every bit of this is crack cocaine, and it is more that seventy-seven grams, and who had it on August the 4th 1997, before he could . . . try to stuff it in the shrubbery, . . . [Petitioner]" (supp. app. p. 337).

The petitioner also maintains that the assistant solicitor improperly commented upon his failure to testify when she argued, "I mean, the testimony is uncontested that Officer Atwood saw the Defendant reach into his pocket, pull out a plastic bag, as they – everybody is on the ground by now. I think everybody will agree that was the testimony of those involved" (supp. app. p. 332). She later argued:

> I mean, the testimony is uncontested that he, Officer Atwood, saw him take it out of his pocket and place it in the mulch. Officer Pina - - can you doubt his credibility? Officer Pina is struggling with the cuff on the left hand. "No, I didn't see him take it out, but I did see him messing in the dirt." It simply confirms what happened. Cornelius Cumbee reached into his pocket and tried his best, when he knew that he was getting cuffed, to get rid of this stuff. Why? It's against the law. You can't have crack cocaine."

16

(Supp. app. p. 333-34).

Trial counsel testified at the PCR hearing that she made a tactical decision not to object.  At trial, the trial judge had denied her motion for a continuance, which she had based upon the fact that she did not have a copy of the transcript from the first trial. Although the trial judge allowed her to review the court reporter's tape of the first trial, counsel described this as "a difficult thing to do" (supp. app. pp. 26-33).  In the subsequent trial, counsel raised an argument alluding to the inconsistency between Officer Pina's trial testimony and his previous testimony (see supp. app. 239-41) and because counsel "had made such a big deal of it during the trial in front of the jury objecting quite a bit in order to listen to the officers' testimony that had been given, I felt that at the time of the closing argument to object again would ... actually do the opposite effect (sic) and that would be to add more credibility to what [the assistant solicitor] was saying. So I did not object during the closing argument" (app. p. 337).  When again asked whether the failure to object was to avoid drawing attention to the assistant solicitor's argument, trial counsel stated that it was.  Also, she explained that she felt that the comments by the assistant solicitor "weren't that blatant," and that she did not object since she felt that "I could ... do what I needed to do in my closing argument to make my point" (app. p. 338).

The respondents argue that the state court's rejection of the petitioner's argument was not "contrary to" and did not involve "an unreasonable application of" clearly established federal law, as determined by the United States Supreme Court.  28 U.S.C. § 2254(d)(1).  Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687.  To prove deficiency, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for

17

counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689.

"[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence." *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) (*citing United States v. Nobles*, 422 U.S. 225 (1975)). "To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another." *United States v. Robinson*, 485 U.S. 25, 33 (1988). The United States Supreme Court has made clear that a petitioner is not entitled to relief based upon the closing argument of a prosecutor unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). The standard in *Donnelly* is a very high standard for a defendant to meet. "'[I]t is not enough that the remarks were undesirable or even universally condemned.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Darden v. Wainwright*, 699 F.2d 1031, 1036 (1983)). "In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo." *United States v. Young*, 470 U.S. 1, 12 (1985). Furthermore, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly*, 416 U.S. at 647.

18

In *State v. Durden*, 212 S.E.2d 587 (S.C. 1975), the state supreme court discussed closing arguments by prosecutors as follows:

> "So long as he stays within the record and its reasonable inferences, *the prosecuting attorney may legitimately appeal to the jury to do their full duty in enforcing the law, or to return the verdict which he conceives it to be their duty to return under the evidence, and it may employ any legitimate means for impressing on them their true responsibility in this respect*, as by stating that a failure to enforce the law begets lawlessness. Thus, he may in effect tell them that the people look to them for protection against crime, and may illustrate the effect of their verdict on the community or society generally with respect to obedience to, and for enforcement of, the law; he has the right to dwell on the evil results of crime and to urge a fearless administration of the criminal law; *and he may ask for a conviction, or assert the jury's duty to convict*. He may argue with reference to any matter which the jurors may properly consider in arriving at their verdict, and may point out as well the matters which they should not consider."

*Id.* at 590 (quoting 23A C.J.S. Criminal Law § 1107) (emphasis added).

A prosecutor may neither vouch for nor bolster the testimony of a government witness in arguments to the jury.  *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir.1997).   "Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury."  *Id.*

> The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.

*Young*, 470 U.S. at 18-19 (citing *Berger v. United States*, 295 U.S. 78, 88-89 (1935)).

19

The respondents argue that, when placed in proper context, *see Donnelly*, 416 U.S. at 647, the comments that the petitioner asserts vouched for the credibility of the prosecution witnesses (supp. app. p. 327, 337) did not constitute impermissible vouching. The assistant solicitor's remark that the jurors did not have any reason to doubt the credibility of the three officers who testified did not suggest that she was relying on information outside the evidence presented at trial and cannot be read as implying that she had access to evidence outside the record. Likewise, the remarks directed to Agent Tang's testimony did not suggest that she was relying on information outside the evidence presented at trial. The respondents argue that the remarks were simply a rebuttal to defense counsel's assault on the credibility of the prosecution's case. The respondents further contend that the petitioner's contrary argument ignores that the assistant solicitor specifically focused upon the demeanor of the police officers before discussing their testimony as to what had happened on August 4, 1997, and, with respect to her reference to Agent Tang, she again focused on his testimony.

The respondents argue that the petitioner also is not entitled to relief based upon the prosecutor's references to certain testimony being "uncontested" (supp. app. p. 332-34). The respondents contend that, unlike the comments that the state court of appeals found to be reversible error in *State v. Sweet*, 536 S.E.2d 91, 92-94 (S.C. Ct. App. 2000) (assistant solicitor's argument that "nobody else knows what happened that night except Tony Sweet and those two [female co-defendants]," and that "[t]here isn't any testimony that conflicts with [the statements of the two girls]" clearly referenced defendant's failure to testify and was not merely a comment on the evidence; also, error not harmless), the comments here were merely that the testimony of the officers was not disputed by the petitioner, and the comments were not directed to the petitioner's failure to testify (*see* supp. app. p. 332) ("I think everybody will agree that was the testimony of those [officers] involved"). *See also Donnelly*, 416 U.S. at 647 ("a court should not lightly infer that a

20

prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations"). Apart from the state court authority of *Sweet*, there is ample authority that these or similar comments are not an improper reference to the accused's failure to testify. *See United States v. Francis*, 82 F.3d 77, 78 (4th Cir.1996) (government's statement during closing that "[t]he evidence is uncontradicted" was not an improper comment on the accused's failure to testify); *United States v. Percy*, 765 F.2d 1199, 1204-05 (4th Cir.1985) (statement that testimony was "unrefuted and unrebutted" was not an improper comment on the accused's failure to testify); *United States v. Jenkins*, 544 F.2d 180, 180-81 (4th Cir.1976) (read in context, a statement that testimony was "uncontradicted" was not "'manifestly intended to be,[nor] was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.'") (quoting *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973)).

Moreover, the challenged comments were in anticipation of the argument of the petitioner's trial counsel, who argued at length concerning perceived defects in the prosecution's case. She argued that the testimony of the officers – particularly Sgt. Workman – was belied by their actions (see supp. app. pp. 340-47). Finally, the trial judge charged the jury before closing arguments that jurors could base their verdict only on the evidence and not what the lawyers said in their arguments. If an attorney's argument as to the facts was different from how the jurors remembered the facts, then they were to disregard the argument because they were the finders of fact. Likewise, if an attorney's comment as to the applicable law differed from the trial judge's instructions, they were to disregard the argument and follow the trial judge's instructions (*see* supp. app. pp. 324-25).

This court agrees with the respondents that in light of this authority it cannot be successfully contended that the PCR judge's decision that the petitioner had not proved either deficient performance or resulting prejudice was "contrary to" or involved "an

21

unreasonable application of" clearly established Federal law, as determined by the United States Supreme Court, as required for relief under Section 2254(d)(1) and *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

January 29, 2007

Greenville, South Carolina